WOLTER *v.* WOLTER.

1. DIVORCE—EXTREME CRUELTY—EVIDENCE.

> Evidence of extreme cruelty *held,* sufficient to justify granting a decree of divorce to plaintiff wife, where her testimony was in part corroborated when contradicted by defendant, notwithstanding defendant claimed plaintiff displayed a lack of affection, nagged defendant, and for 2 years prior to separation refused to cohabit with defendant, all of which was denied by plaintiff.

2. SAME—DIVISION OF PROPERTY—SUPREME COURT.

> Division of property between childless couple, parties to suit for divorce, is made by Supreme Court so as to divide property, acquired during marriage lasting about 7 years, approximately equally, in view of wife's participation in acquisition of property and lack of alimony, where decree denied either party by trial court, is awarded to plaintiff.

3. SAME—ATTORNEY FEES.

> Attorney fee of $300 is awarded wife's attorney in suit for divorce and made a lien on particular item of real estate awarded husband if not paid within 30 days.

4. SAME—COSTS.

> No costs are allowed except attorney fee for wife, where decree of divorce, denied either party by the trial court, is awarded wife by the Supreme Court on appeal.

Appeal from Wayne; Moynihan (Joseph A.), J. Submitted October 4, 1951. (Docket No. 36, Calendar No. 45,151.) Decided January 7, 1952.

REFERENCES FOR POINTS IN HEADNOTES
[1] 17 Am Jur, Divorce and Separation §§ 56, 75.
[2] 17 Am Jur, Divorce and Separation § 445.

Bill by Marie M. Wolter against Otto G. Wolter for divorce on ground of extreme and repeated cruelty. Cross bill by defendant against plaintiff on grounds of extreme and repeated cruelty. Decree dismissing both bill and cross bill. Plaintiff appeals. Reversed and decree entered for plaintiff.

*Leo B. Lange* and *Walter M. Nelson,* for plaintiff.

*Silverston & Kabatsky* and *Charles C. Benjamin,* for defendant.

North, C. J. Each of these parties in the circuit court in chancery sought a divorce from the bonds of matrimony. Initially plaintiff wife by her bill of complaint sought a decree of separate maintenance, but later asked for a divorce on the ground of extreme and repeated cruelty; and defendant husband by his cross bill sought a divorce on like ground. The trial judge, concluding that neither had established a right to relief, decreed dismissal of plaintiff's bill of complaint and of defendant's cross bill. Plaintiff wife has appealed. Defendant husband has not appealed.

Our review of the record brings the conclusion that the wife should have been decreed a divorce on the ground above noted. We will refer herein to only a portion of the items of extreme and repeated cruelty as to which testimony was offered in behalf of the wife. We are mindful of the conflict between her testimony and that of the husband; and also that her testimony was corroborated in only a comparatively few particulars. But such corroboration of plaintiff's testimony contradicted by defendant lends an added degree of credence to her uncorroborated testimony in the particulars in which it was contradicted by the husband.

Each of these parties was of German birth. At the time of the hearing in the trial court they were 48 or 49 years old. They were married in November, 1940, and separated in March, 1948, when plaintiff started this suit. No children were born of the marriage. Plaintiff alleged and produced testimony tending to prove acts of extreme and repeated cruelty, some of which were as follows.

Plaintiff charged that on New Year's Eve, 1942, while the parties were in her brother's home they quarreled about some money matters and that defendant struck her with such force that she fell against the corner of the house and gashed her forehead, which resulted in some bleeding. Defendant denies that there was any quarreling about money matters, but instead that the 2 parties in effect collided while the wife was going down and the husband coming up the stairs leading from the basement to the first floor, incident to which he claims his wife struck him. He denied that he struck his wife, but did testify that she fell to her knees and that as a result of the physical encounter plaintiff's brother, according to defendant's testimony, intervened and "he pushed me out of the door (evidently a grade door)." Plaintiff's brother testified in corroboration of her version of this encounter and, without contradiction, added that defendant apologized for what had happened. The record also discloses an offer to further corroborate plaintiff's version of this affair by the testimony of her brother's wife, but her testimony does not appear to have been taken. It is true that the altercation, just above noted, happened several years before the final separation of these parties, and therefore might not be too persuasive as to plaintiff's right to a divorce. However, the testimony concerning this event quite conclusively indicates that defendant's testimony in this particular was untrue, and therefore the testimony

of this incident bears quite materially upon his credibility.

According to plaintiff's testimony, in July, 1945, while she and her husband were riding in his automobile he displayed anger because plaintiff had been too long in making a purchase in a grocery store and that "he bawled me out and struck me right in the face." She thereupon left the car and walked home. As to this particular incident plaintiff's uncorroborated testimony was denied by defendant.

Again from plaintiff's testimony it appears that in September, 1947, because of some rather inconsequential circumstances, defendant became very angry, hit her in the face, knocked her to the floor, and kicked her when she was down; and as a result plaintiff suffered severe bruises and her face was so puffed up that for several days she stayed at home from her work. As to this incident plaintiff's testimony was corroborated by that of Verna Topsher, who was a co-worker with plaintiff. This witness testified that when plaintiff returned to her work she had a black eye and the side of her face was bruised and puffed up. There was farther corroboration by plaintiff's brother, who said that when plaintiff came to his home he observed "injuries on her face. She had a black eye and her face was in terrible shape—all puffed up." Defendant testified that he never struck plaintiff, and concerning the incident above noted gave the following unconvincing answers:

"*Q.* Now, the occasion that your wife spoke about in '47, when she claimed you kicked her. What happened?

"*A.* I don't know a thing about that.   *   *   *

"*Q.* What did you—what happened if anything happened?

"*A.* Well I don't know what, I don't know what was she, she claims about I beat her up, bruises and disfigured face, so I, I don't know about that."

In addition to the above specifically noted altercations, plaintiff testified defendant struck her on various occasions as to which she could not remember the exact dates; that defendant had an "intolerable temper;" that on various occasions he called her vile names and in effect charged her with being an unacceptable wife.

In the light of the record presented on this appeal, we conclude that plaintiff should have been granted a decree of divorce on the ground of extreme and repeated cruelty; notwithstanding defendant alleged that plaintiff displayed a lack of affection; that during a part of the time the parties lived and cohabited together, although he delivered to her his pay checks, plaintiff continually demanded money of defendant, and that at least once a month plaintiff "attempted to scold, nag and quarrel with the cross-plaintiff in connection with her demands for additional money, or otherwise, all of which made the continuance of the marriage relationship impossible and intolerable." We are also mindful that defendant testified that during practically 2 years next preceding the separation, plaintiff refused to cohabit with defendant. This was denied by plaintiff's testimony, and in consequence it cannot be said defendant's charge in this particular was proven.

Under the circumstances it remains for this Court, on this hearing *de novo,* to determine what would be an equitable adjudication of the property rights of these parties. Because of the manner in which the trial judge disposed of the case, he had no occasion for considering this phase of the instant case. As bearing upon property rights of the respective parties the record discloses the following. The most valuable single item possessed jointly by these par-

ties is their residence, referred to as the Waltham property, which was left to them by the will of a Mr. Thurm. This property is shown to have been worth at least $9,000 or $10,000, but was subject to a mortgage of $3,380.45. However by subsequent payments made by defendant the unpaid balance of the mortgage at the time of the hearing was $941.14. The above property and all of the stock investments, to which reference is hereinafter made, as well as an amount of cash, were acquired by these parties from Mr. Thurm by virtue of an agreement entered into between him and these parties in 1941. Briefly the agreement was that if the parties to this suit would move into the residence of Mr. Thurm, a widower, furnish him with his board, room, and care in general, he would by will leave to these parties all the property of which he was possessed at the time of his demise. He died about 4 months after the agreement was entered into, and by will made these parties his sole beneficiaries. It is obvious that this agreement would have been quite impossible except for plaintiff's participation therein in the way of caring for the household, looking after Mr. Thurm, et cetera. That she discharged these duties is not questioned; and for that period she discontinued her wage-earning employment outside the household. During 3 or 4 of the 7 years these parties lived together, plaintiff was employed outside of her home duties. Her undisputed testimony discloses a total of gross earnings during the years 1945, 1946 and 1947 of $2,701.79. It is a fair inference that these earnings of plaintiff, as well as the earnings of defendant, were expended for their living and as investments in the property possessed by them at the time of their separation. As to the husband's earnings, the record discloses that he ordinarily earned approximately $70 per week, but on one occasion for a period of 4 months due to a

heart condition he was unemployed. At least since the separation defendant has been receiving rental for the second story of the Waltham property of $15 per week. He had previously made some repairs and improvements on this property. We forego reference to many other details that have more or less bearing upon what would constitute an equitable disposition of property rights in this case; but we conclude that such result will, as nearly as possible, be accomplished by a decree which provides:

Plaintiff shall have as her sole property, subject to the unpaid portion of the mortgage thereon, the so-called Waltham property with the fixtures, furniture and furnishings therein, but defendant shall have the right to remove his personal effects therefrom. This property is an income-producing property, and including furniture and furnishings has a net value of $10,000 or $11,000.

The defendant should be decreed to be the sole owner of the 2 lots facing on Lake St. Clair, which are of the approximate value of $3,050; the 20 acres of orchard property located on Van Dyke avenue, Macomb county, of the approximate value of $4,000; United States savings bonds of the maturity value of $250; deposit in a Detroit bank of approximately $50; 100 shares Goebel Brewing Company stock, estimated value $1,075; 50 shares United Shirts stock, estimated value $1,075; also the 100 shares of stock in the McClanahan Oil Company and a like number of shares in the Eulin and Company, which are of questionable value; and the 1940 Plymouth automobile which is of relatively small value.

There is considerable variance in the testimony as to the actual or estimated value of many of the items of property involved in this case; but in our judgment the foregoing results in an approximation of equal division between these parties of the

property possessed at the time of the separation. The decree herein may provide that as to each parcel of real estate an appropriate quitclaim deed shall be delivered to the party entitled thereto, and in default thereof either party may cause a certified copy of the decree to be recorded as evidence of title. All items of property are to be conveyed or assigned subject to any unpaid taxes or assessments. The foregoing adjustment of property rights will be in full satisfaction of any and all interest either party may now or hereafter have in property decreed to the opposite party. Alimony (including payment of back alimony) will not be decreed to plaintiff. An attorney fee of $300 shall be paid by defendant within 30 days from the date hereof to plaintiff's counsel; and unless paid before decree is entered, this item may be decreed to be a lien on the Van Dyke avenue property. The decree, in accord with the foregoing, to be entered in this Court, will be without costs except the above attorney's fee; and the case will be remanded to the trial court with jurisdiction to hear and determine any future matters arising therein.

DETHMERS, CARR, BUSHNELL, SHARPE, BOYLES, and REID, JJ., concurred. BUTZEL, J., did not sit.